IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:18-cv-94

| | | |
|---|---|---|
| EPIC GAMES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| JOSEPH SPERRY, a.k.a. "Spoezy," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff, Epic Games, Inc. ("Epic" or "Plaintiff") complains of Defendant Joseph Sperry,

a.k.a. "Spoezy" ("Sperry" or "Defendant"), as follows:

## NATURE OF ACTION

1.      This is a civil action seeking injunctive relief and damages against Defendant for

(i) copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*;

(ii) contributory copyright infringement in violation of the Copyright Act, §§ 106 and 501, *et*

*seq.*; (iii) circumvention of technological measures in violation of the Digital Millennium

Copyright Act, 17 U.S.C. §§ 1201(a)-(b) and 1203, *et seq.*; (iv) trafficking in technology that is

primarily designed, produced, and marketed by Defendant for the purpose of circumventing a

technological measure that effectively controls access to a copyright protected work in violation

of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)-(b) and 1203, *et seq.*; (v) breach

of contract in violation of North Carolina law; and (vi) intentional interference with contractual

relations in violation of North Carolina law.

2.      The Copyright Act protects the owners of creative works from the unauthorized

use of those works by others.  The right to prepare derivative works based upon a copyrighted

work is one of the exclusive rights granted to copyright holders under the Act. The definition of derivative work encompasses any form in which the original work may be recast, transformed, or adapted. With a few exceptions that do not apply here, it is unlawful to make unauthorized derivative works without the permission of the copyright owner. It is likewise unlawful to induce, cause, or materially contribute to the infringing activities of others.

3.     The Digital Millennium Copyright Act ("DMCA") was enacted in 1998 to bring the Copyright Act into the digital age. Among other things, the DMCA prohibits both the circumvention of any technological measure that effectively controls access to a copyright protected work and trafficking in technology that is primarily designed, produced, or marketed for the purpose of circumventing such technological measures, and grants copyright owners the right to enforce those prohibitions.

4.     This is a copyright infringement and breach of contract case in which the Defendant is, among other things, infringing Epic's copyrights by creating, using, marketing, selling, and trafficking in software, part of which, on information and belief, is primarily designed to circumvent technological measures that effectively control access to the code of Epic's popular game, Fortnite®.[1] Defendant's software also injects unauthorized computer code into Epic's copyright protected Fortnite code. In so doing, Defendant and those who use the cheating software he makes, uses and sells, create unauthorized derivative works of Fortnite by modifying the game code and, thus, materially altering the game that the code creates and the experience of those who play it.

---

[1] Game names that are registered trademarks of Epic are shown with the federal registration symbol the first time each game name appears and without it thereafter.

2

5.     Defendant's conduct infringes Epic's copyrights in the game, violates the prohibitions of the DMCA, and breaches the terms of the contracts to which Defendant agreed in order to have access to the game.

6.     Defendant, a self-proclaimed "cheater," is engaging in this unlawful conduct for personal financial gain.  Defendant creates cheat software ("cheats" or "hacks"), the purposes of which are to, (a) on information and belief, unlawfully circumvent technological measures that effectively control access to the Fortnite software, and (b) modify Fortnite's code so that he and those who purchase and use his cheats have an unfair competitive advantage over other Fortnite players, ruining the games for them.

7.     Defendant has both used cheat software himself and also marketed and sold cheats to others, encouraging and inducing them to purchase and use the cheats he creates, markets, and sells.  Defendant's conduct is profoundly damaging to Epic because cheating by even a relatively small number of players can ruin the experiences of many of the other tens of millions of people who play and do not cheat, or the tens of thousands of people who watch others play the game.

8.     The use of the cheat software Defendant creates, both by Defendant and those he has induced to cheat, infringes Epic's copyrights in Fortnite and, on information and belief, violates the DMCA's anti-circumvention and trafficking prohibitions, and breaches the terms of the agreements to which they have agreed in order to have access to the game.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*, and 1201 and 1203, *et seq.*  This Court has supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367(a).

PPAB 4151246v3

10.     This Court has personal jurisdiction over Defendant because, as described below, Defendant consented to jurisdiction in this District. This Court also has personal jurisdiction over Defendant because Defendant has purposefully availed himself of the privileges of conducting activities and doing business in the State of North Carolina and in this District, thus invoking the benefits and protections of North Carolina's laws, by entering into contractual agreements with Epic, and repeatedly accessing Epic's servers, which are located in this District, under the terms of those agreements.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because this is a District in which a substantial part of the events giving rise to Plaintiff's claims occurred, in which Defendant committed acts of copyright infringement, and/or where Plaintiff's injuries were suffered. Venue is also proper in this District because, as described below, Defendant has consented to venue in this District.

## THE PARTIES

12.     Epic is a corporation duly organized and existing under the laws of the State of Maryland. Epic is registered to do business in North Carolina and has its principal place of business in Wake County, North Carolina.

13.     On information and belief, Defendant Joseph Sperry, a.k.a. "Spoezy," is a citizen and resident of New York.

## FACTS APPLICABLE TO ALL CLAIMS

### *Epic and Fortnite*

14.     Founded in 1991, Epic is a Cary, North Carolina-based developer and publisher of computer games, game engine software, and content creation software. Epic is recognized worldwide as the creator of the Unreal®, Gears of War®, and Infinity Blade® series of games.

4

Epic is also globally known as the creator of the Unreal Engine® game engine and content creation software.

15.     Epic's game Fortnite was released in a limited matter in October, 2013.

16.     Fortnite is a co-op survival and build, action game that has been described as being "about exploration, scavenging gear, building fortified structures and fighting waves of encroaching monsters hellbent on killing you and your friends."[2]

17.     In Fortnite, players may join together online to build forts, weapons, and traps, in an effort to rebuild and defend towns left vacant in the wake of "the Storm" from the monsters that populate the Fortnite world.

18.     Fortnite was broadly released on July 25, 2017.  Fortnite's free-to-play "Battle Royale" game mode was released to the public on September 26, 2017.

19.     Fortnite has become extremely popular.  It now has tens of millions of players and is Epic's most successful game yet.  (A true and correct screen print from the Fortnite page on Epic's website [available at: http://www.epicgames.com/fortnite/en-US/home] that provides a glimpse into Fortnite's violent and cartoonish world is pictured below in **Figure 1**):

---

[2] Michael McWhertor, *Epic Games' Fortnite will be the developer's first Unreal Engine 4 game*, July 12, 2012, available at: https://www.polygon.com/gaming/2012/7/12/3155138/epic-games-fortnite-will-be-the-developers-first-unreal-engine-4-game

PPAB 4151246v3



**(*Figure 1.*)**

20.      Like other games in the "battle royale" genre, Fortnite's Battle Royale game mode involves dropping (in Fortnite, by glider from a flying "battle bus,") a limited number of players into a large map.  Fortnite's Battle Royale game mode combines Fortnite's building skills and destructible environments with intense player vs. player ("PvP") combat.  Players battle each other until only one player remains standing.  That player wins the game.

21.      In designing Fortnite's Battle Royale game mode, Epic made a conscious choice <u>not</u> to sell items to players that would give any player a competitive advantage in order to ensure a fair playing filed for all players.

### ***Epic's Copyrights in Fortnite***

22.      Epic is the author and owner of all the rights and title to the copyrights in Fortnite, including without limitation, in its computer software.

6

23. Epic's copyrights in Fortnite are the subjects of U.S. Copyright Registration Nos. TXu01-895-864 (dated December 18, 2013), TX008-186-254 (dated July 14, 2015), TX008-254-659 (dated March 3, 2016), and TX008-352-178 (dated December 23, 2016), among others. (True and correct copies of these certificates of registration are attached hereto collectively as **Exhibit A**.)

### *Epic's Terms of Service*

24. In order to play Fortnite on PC—which is the platform on which Defendant and those to whom he sells his cheats are accessing and cheating at Fortnite in this case—a user must first create an account with Epic. In order to create an account, a would-be user must affirmatively acknowledge that he or she has "read and agree[d] to the Terms of Service" (the "Terms"). (A true and correct copy of the Terms of Service is attached hereto as **Exhibit B**.)

25. The Terms apply to any use of, or access to, Fortnite using one's PC, as Defendant and his customers do in this case.

26. The Terms apply to any use of, and bind any user of, Epic's websites by any "guest or registered users . . . including any content, functionality, products, and services offered on or through" Epic's websites. (*See id.* at 1.) This necessarily includes Epic's Fortnite website and its users.

27. The Terms also apply to an individual's "use of other Epic services that display or include the[] Terms." (*Id.* at 1.) This too covers Fortnite and those who use it.

28. The Terms request that users read the Terms "carefully" before beginning to access or use Epic's services. (*Id.*)

29. The Terms provide that "[b]y using [Epic's s]ervices, [the user] accept[s] and agree[s] to be bound and abide by these Terms . . ." (*Id.*) Epic's Terms further provide that a user who does not want to agree to the Terms "must not use [Epic's s]ervices." (*Id.*)

7

30.     The Terms include a section on "Governing Law and Jurisdiction," which provides that "[a]ny dispute . . . arising out of or related to these Terms ('Claim') shall be governed by North Carolina law . . .. Any legal suit, action, or proceeding arising out of, or related to, a Claim shall be instituted exclusively in the federal courts of the United States or the courts of North Carolina, in each case located in Wake County." (*Id.* at 4.)

31.     This section of the Terms further provides that, by agreeing to the Terms, an individual "agree[s] to waive any and all objections to the exercise of jurisdiction over you by such courts and to venue in such courts." (*Id.* at 4.)

32.     The Terms explain that the services, "including all content, features, and functionality thereof, are owned by Epic, its licensors, or other providers of such material and are protected by United States and international copyright . . . laws." (*Id.* at 1.)

33.     The Terms also inform the user that use and access of certain "software or services . . . may be subject to separate agreement . . . such as end user license agreements." (*Id.*)

34.     The Terms also include an "Intellectually Property Rights" section which sets forth the permissions users have with respect to Epic's intellectual property and what users are prohibited from doing. Specifically, the Terms provide that users:

     a.     are "permitted to use [Epic's s]ervices for [their] personal, non-commercial use only or legitimate business purposes related to your role as a current or prospective customer of Epic"; **but**

     b.     "**must not copy, modify, create derivative works of**, publicly display, publicly perform, republish, **or transmit any of the material obtained through [Epic's s]ervices**, or delete, or alter any copyright, trademark, or other proprietary rights notices from copies of materials from [Epic's s]ervices;" and

8

c. "**must not** reproduce, sell, or **exploit for any commercial purposes** any part of [Epic's s]ervices, access to [Epic's s]ervices or use of [Epic's s]ervices or any services or materials available through Epic's [s]ervices." (*Id.* at 2.) (emphasis added).

35.     The Terms also provide that users may use Epic's services "only for lawful purposes and in accordance with these Terms of Service. [Users] agree not to access or use the [s]ervices for any purpose that is illegal or beyond the scope of the [s]ervices' intended use . . ." (*Id.*)

36.     By creating an account with Epic in order to access, download, and play Fortnite, and by using Epic's services, including, without limitation, by playing Fortnite, Defendant and those who use his cheats agreed to be bound by the Terms.

37.     The Terms constitutes a valid and binding contract between Defendant and Epic. The Terms also constitute valid and binding contracts between Defendant's customers and Epic.

38.     Defendant's conduct described herein violates the Terms and breaches Defendant's agreement with Epic.

39.     The conduct described herein of those who use Defendant's cheats violates the Terms and breaches their agreements with Epic.

### *Fortnite End User License Agreement*

40.     In order to play Fortnite, as Defendant and his customers have done in this case, a user must first acknowledge that he or she has read and agreed to abide by the terms in the Fortnite End User License Agreement ("EULA"). (A true and correct copy of the Fortnite End User License Agreement is attached hereto as **Exhibit C**.)

41.     The EULA applies to any user who downloads, uses, or "otherwise indicates acceptance" of the EULA. (*Id*. at 1.)

9

42.     Like the Terms, the Fortnite EULA explicitly requests that individuals read the Terms "carefully." (*Id*. at 1.)  The EULA further makes clear that the EULA "is a legal document that explains your rights and obligations" in connection with the access and use of Fortnite. (*Id*.)

43.     The EULA includes a section titled "Governing Law and Jurisdiction" under which the user agrees that the EULA will be deemed to have been made and executed in the State of North Carolina. (*Id*. at 5-6.)

44.     This section of the EULA further provides that "[a]ny action or proceeding brought to enforce the terms of this Agreement or to adjudicate any dispute must be brought in the Superior Court of Wake County, State of North Carolina or the United States District Court for the Eastern District of North Carolina." (*Id.* at 6.)

45.     Under this section of the EULA, the user agrees to the exclusive jurisdiction and venue of these courts. . . .[and to] waive any claim of inconvenient forum and any right to a jury trial. (*Id*.)

46.     The EULA grants an individual user "a personal, non-exclusive, non-transferable, non-sublicensable limited right and license to install and use one copy of the Software on a device for [the user's] personal entertainment use." (*Id*.)

47.     Epic also includes a "License Conditions" section in its EULA. (*Id*.)  In that section, the EULA specifically defines certain prohibited activities and states that **a player may not**:

      a.     use Fortnite "commercially or for a promotional purpose;"

      b.     "copy, reproduce, distribute, display, or use [Fornite] in a way that is not expressly authorized in this Agreement;"

10

c. "reverse engineer, derive source code from, modify, adapt, translate, decompile, or disassemble it **or make derivative works based on it;**"

d. "**remove, disable, circumvent, or modify any proprietary notice or label or security technology included in it**;" and

e. "**create, develop, distribute, or use any unauthorized software programs to gain advantage in any online or other game modes**." (*Id.*) (emphasis added.)

48. By accessing, downloading, and/or using Fortnite, Defendant and those who use his cheats agreed to be bound by the EULA.

49. Defendant and those who use his cheats also agreed to be bound by the EULA by indicating acceptance to its terms.

50. The EULA constitutes a valid and binding agreement between Epic Games and Defendant. The EULA also constitutes valid and binding agreements between Epic Games and those who use Defendants cheats.

51. Defendant's conduct described herein violates the EULA and breaches Defendant's agreement with Epic.

52. The conduct described herein of those who use Defendant's cheats violates the EULA and breaches their agreements with Epic.

### *The Defendant and His Unlawful Acts*

53. Defendant is a cheater.

54. Nobody likes a cheater. And nobody likes playing with cheaters. These axioms are particularly true in this case.

55. Epic does not allow or support cheats in Fortnite, including in its Battle Royale game mode.

56.     Defendant downloaded and accessed Fortnite.

57.     Defendant has used the cheats he created for the purposes described above.

58.     Defendant also promotes and sells these cheats to third parties for his own personal financial gain.

59.     On information and belief, the third parties who have purchased Defendant's cheats have used the cheats to (a) unlawfully circumvent technological measures that effectively control access to the Fortnite software and (b) modify Fortnite's code so that they have an unfair competitive advantage over other Fortnite players, ruining the games for them.

60.     Cheats give cheaters who use them power to do or see things that others players cannot.  For instance, a cheat might enable the cheater to see through solid objects, teleport, impersonate another player by "spoofing" that player's user name, or make moves other players cannot, such as a spin followed by an instant headshot to another player.

61.     Defendant's use, and the use of his cheats by those who purchase the cheats from Defendant, often ruin the game for other players.  The use of cheats in Fortnite is likely to discourage other, would-be players from playing the game.

62.     Defendant owns the domain name <spoezy.me>, which incorporates his moniker, "Spoezy."  Defendant proudly proclaims that he is a "Cheater" on the homepage of the website to which <spoezy.me> resolves.  (A true and correct screen print of the homepage of the website to which the Defendant's <spoezy.me> domain name resolves is pictured below in **<u>Figure 2</u>**.)

PPAB 4151246v3



*(Figure 2.)*

63.     Defendant also has accounts on Steam, Twitch, and Discord, which are digital distribution platforms that offer subscribers various types of services including multiplayer gaming, video streaming, and social networking services.  Defendant has sold the cheats he has created for use in Fortnite on his Discord account and, on information and belief, using these other platforms.

64.     The cheat software created, used, marketed, and sold by Defendant, and used by those whom Defendant provides such software, circumvents technological measures that effectively control access to the Fortnite software and improperly injects unauthorized code into the active memory of the game as it runs and alters the code that is sent back to Epic's servers. The cheat software manipulates the functionality of the game and gives the cheater an unfair competitive advantage over other players.

65.     This modification of the game's code as it runs on the cheater's computer and alteration of the code that is sent back to Epic's servers materially change both the game's code and the audio visual aspects of the game that are created by the code.  These changes create a

different, but substantially similar, version of the Fortnite game than that which is created by Epic's copyright protected software.

66. In using cheat software to modify the game's code in this way, Defendant, and other cheaters whom Defendant has induced to use the cheat, create unauthorized derivative works based on Fortnite in violation of the Copyright Act.

67. Creating, using, selling, and purchasing the cheat software also violate the express terms of both the EULA and the Terms, both of which prohibit, among other things, any modification of the game and the creation of derivative works based on Fortnite.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Copyright Infringement in violation of
the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*)**

68. Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 67 of this complaint, as if set forth fully herein.

69. Epic is the author, creator and owner of all rights, title and interest in a number of valid, registered, and enforceable copyrights in Fortnite.

70. These copyrights are the subjects of the copyright registration certificates referenced above and attached hereto as Exhibit A, and are incorporated by reference as if fully set forth herein.

71. Defendant has had, and continues to have, access to Fortnite.

72. Defendant has infringed, and continues to infringe, Epic's copyrights in Fortnite by improperly using computer software that injects code into Fortnite's code, which then materially modifies and changes Fortnite's code, thereby creating an unauthorized derivative work of Epic's copyrighted Fortnite code. Defendant's unauthorized derivative works are substantially similar to Epic's copyrighted work.

14

73. Epic never authorized Defendant to create derivative works based on Fortnite.

74. In creating such unauthorized derivative works, Defendant has infringed Epic's copyrights and is liable to Epic for direct, willful infringement under 17 U.S.C. § 501, *et seq.*

75. On information and belief, Epic has suffered damages, including lost sales and profits, as a result of Defendant's contributory infringement.

76. In addition to Epic's actual damages, Epic is entitled to receive any additional profits made by Defendant from his wrongful acts pursuant to 17 U.S.C. § 504.

77. In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 504(c). These statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to Defendant's willful infringement.

78. Defendant's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause, Plaintiff's great and irreparable injury that cannot fully be compensated or measured in money. Epic has no adequate remedy at law for Defendant's wrongful conduct because (i) Epic's copyrights are unique and valuable property that have no readily determinable market value; (ii) Defendant's infringement constitutes an interference with Epic's goodwill and customer relations; and (iii) Defendant's wrongful conduct, and the damages resulting therefrom are continuing.

79. Therefore, Epic is entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order under 17 U.S.C. § 503(a) that prohibits Defendant from further infringing Epic's copyrights and orders Defendant to destroy all copies of infringing videos and cheats he is using against Epic in violation of Epic's copyrights

80. Epic is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

PPAB 4151246v3

## SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement
### in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*)

81.     Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 80 of this complaint, as if set forth fully herein.

82.     As set forth above, Epic is the owner of valid, registered, and enforceable copyrights in Fortnite.

83.     As also set forth above, Defendant has created, promoted, marketed, and sold cheat software to third parties for these individuals to use to gain an unfair advantage in Fortnite.

84.     As described above, this cheat software unlawfully modifies Fortnite's copyrighted code in a manner that infringes Epic's copyrights by creating unauthorized derivative works of Epic's Fortnite software.

85.     Defendant materially contributes to the direct infringement of Epic's copyrights by promoting, marketing, and selling the cheat software to third parties, actively encouraging and inducing other cheaters, and would-be cheaters, to purchase and use the cheat in Fortnite.

86.     Defendant has actual knowledge of the direct infringing activity of these other cheaters described above, and caused or contributed materially to, and/or participated substantially in, such direct infringement.

87.     Defendant has engaged in his acts of contributory infringement with the actual and/or constructive knowledge that the preparation of derivative works based upon Epic's Fortnite software infringes Epic's copyrights in the software.

88.     Accordingly, Defendant is liable for contributory copyright infringement of Epic's Fortnite game.

89.     On information and belief, Epic has suffered damages, including lost sales and profits, as a result of Defendant's contributory infringement.

16

90.     In addition to Epic's actual damages, Epic is entitled to receive any additional profits made by Defendant from his wrongful acts pursuant to 17 U.S.C. § 504.

91.     In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).  These statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to the Defendant's willful contributory infringement.

92.     As a result of Defendant's contributory copyright infringement, Epic has suffered, and will continue to suffer, substantial and irreparable damage to its business reputation and good will, as well as actual losses in an amount not yet fully ascertained, but which will be further determined according to proof.  Epic's remedy at law is not adequate to redress the harm Defendant has caused and will continue to cause unless and until his conduct is otherwise restrained and enjoined.

93.     By reason of the foregoing, Epic is entitled to injunctive relief against Defendant pursuant to 17 U.S.C. § 502.

94.     Epic is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## THIRD CLAIM FOR RELIEF
### (Circumvention of Technological Measures in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)-(b) and 1203)

95.     Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 94 of this complaint, as if set forth fully herein.

96.     Fortnite is an original work of authorship and copyrightable subject matter under the laws of the United States

97.     Epic owns the exclusive rights to all right, title and interest in Fortnite, along with valid, registered, and enforceable copyrights in Fortnite.

17

98.     In order to protect its rights in Fortnite, Epic has designed and put in place technological measures that effectively control access to Fortnite.

99.     Defendant has created and is using cheat software that, on information and belief, contains technology, components, or parts, which are primarily designed to circumvent the technological security measures Epic has put in place to control access to Fortnite's code.

100.     Defendant promotes, sells, and distributes the cheats in online forums and through his own Discord channel.

101.     On information and belief, Defendant actively assists other cheaters in using these cheats in order to circumvent Epic's technological security measures.

102.     On information and belief, these cheats have no commercially significant purpose or use other than to (a) circumvent Epic's technological security measures, which were put in place to control access to Fortnite and protect Epic's copyrighted works, and (b) unlawfully modify Epic's game software code.

103.     Defendant's actions constitute a violation of the DMCA,  17 U.S.C. §§ 1201(a)-(b) and 1203.

104.     Defendant's actions have been, and continue to be, willful and are being performed without the permission, authorization, or consent of Epic.

105.     As a direct result of Defendant's violations of the DMCA, Epic has sustained, and will continue to sustain, substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Epic is entitled to injunctive relief restraining and enjoining Defendant's continuing unlawful conduct under 17 U.S.C. § 1203(b).

106.     As a direct result of Defendant's violations of the DMCA, Epic is entitled to actual damages and Defendant's profits attributable to Defendant's violations of the DMCA under 17 U.S.C. § 1203(c)(2).

107. In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

108. Epic is also entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b).

## FOURTH CLAIM FOR RELIEF
### (Trafficking in Circumvention Devices in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)-(b) and 1203)

109. Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 108 of this complaint, as if set forth fully herein.

110. As alleged above, Epic owns the exclusive rights to all right, title and interest in Fortnite, along with valid, registered, and enforceable copyrights in Fortnite.

111. In order to protect its rights in Fortnite, Epic has designed and put in place technological measures that effectively control access to Fortnite.

112. On information and belief, Defendant has created and is offering to the public, providing, and otherwise trafficking in the United States cheat software that, on information and belief, contains technology, components, or parts, which, are primarily designed to circumvent the technological security measures Epic has put in place to control access to Fortnite's code.

113. For instance, Defendant promotes, sells, and distributes the cheats in online forums and through his own Discord channel.

114. On information and belief, these cheats have no commercially significant purpose or use other than to (a) circumvent Epic's technological security measures, which were put in place to control access to Fortnite and protect Epic's copyrighted works, and (b) unlawfully modify Epic's game software code.

115. On information and belief, Defendant actively assists other cheaters in using these cheats in order to circumvent Epic's technological security measures.

PPAB 4151246v3

116.     Defendant's actions constitute a violation of the DMCA,  17 U.S.C. §§ 1201(a)-(b) and 1203.

117.     As a direct result of Defendant's violations of the DMCA, Epic has sustained, and will continue to sustain, substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Epic is entitled to injunctive relief restraining and enjoining Defendant's continuing unlawful conduct under 17 U.S.C. § 1203(b).

118.     As a direct result of Defendant's violations of the DMCA, Epic is entitled to actual damages and Defendant's profits attributable to Defendant's violations of the DMCA under 17 U.S.C. § 1203(c)(2).

119.     In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

120.     Epic is also entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b).

## FIFTH CLAIM FOR RELIEF
### (Breach of Contract)

121.     Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 120 of this complaint, as if set forth fully herein.

122.     Access to and use of Epic's services, including Fortnite, is governed by and subject to the Terms.

123.     Access to and use of Fortnite is also governed by and subject to the EULA.

124.     In order to use Epic's services, including Fortnite, all users must "read and agree" to the Terms in order to create an account with Epic.

125.     In order to access Fortnite, users  must "read and agree" to the terms of the EULA.

20

126. Defendant agreed to the Terms and the EULA by creating an account with Epic, using and accessing Epic's services, and/or downloading, playing, and/or accessing Fortnite. Therefore, the Terms and the EULA are both valid, enforceable contracts between Epic and the Defendant.

127. On information and belief, Defendant regularly used and accessed Epic's services having knowledge that he was bound by the Terms and by the EULA.

128. Epic has performed all of its obligations under the Terms and the EULA.

129. Defendant has, and has continued to, knowingly, intentionally, and materially breach the Terms and EULA by, among other things,

    a. making derivative works based on Fortnite;

    b. copying, reproducing, distributing, displaying, using, modifying, performing, republishing, or transmitting Fortnite in a way not authorized in the EULA or the Terms;

    c. removing, disabling, circumventing, or modifying any proprietary notice or label or security technology included in Fortnite; and/or

    d. creating, developing, distributing, or using unauthorized software programs to gain advantage in any online or other game modes.

130. As a direct result of Defendant's breaches of the Terms and EULA, Epic has been, and will continue to be, harmed and is entitled to injunctive relief, compensatory damages, attorneys' fees, costs, and/or other equitable relief against Defendant.

PPAB 4151246v3

## SIXTH CLAIM FOR RELIEF
### (Intentional Interference with Contractual Relations)

131.    Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 130 of this complaint, as if set forth fully herein.

132.    As set forth above, in order to play Fortnite, a user must first create an account with Epic.  To create an account, a user must agree to abide by the Terms.  A user's agreement to abide by the Terms creates a contract between Epic and the user.

133.    The Terms expressly prohibit a user from "**copy[ing], modify[ing], creat[ing] derivative works of, publicly display[ing]**, publicly perform[ing], republish[ing] or transmit[ting] any of the material obtained through [Epic's s]ervices." (<u>Exhibit B</u> at 2) (emphasis added.)

134.    In order to play Fortnite, a user must also agree to abide by the Fortnite EULA.  A user's agreement to abide by the EULA also creates a contract between Epic and the user.

135.    The EULA prohibits a player from "reverse engineer[ing], deriv[ing] source code from, modify[ing], adapt[ing], translat[ing], decompil[ing,] or disassembl[ing Fortnite] or **mak[ing] derivative works based on [Fortnite]**" and "**creat[ing], develop[ing], distribut[ing], or us[ing] any unauthorized software programs to gain advantage in any online or other game modes**." (<u>Exhibit C</u> at 1) (emphasis added.)

136.    Epic's contracts with its users are valid and enforceable.

137.    On information and belief, Defendant has knowledge of the contracts between Epic and its registered users, and Defendant has knowledge of the previously recited prohibitions that the Terms and the EULA place on users since Defendant is a registered user of Epic's services and has agreed to the terms of both the EULA and the Terms.

22

138.     Defendant, knowing that the use of cheats by Fortnite users breaches the contracts between Epic and its users, has intentionally and willfully encouraged and induced users of Fortnite to use the cheats.

139.     Defendant, therefore, has intentionally interfered, and will continue to interfere, with the contracts formed between Epic and its users.

140.     On information and belief, Defendant has acted without justification in intentionally interfering with the contracts between Epic and its users.

141.     On information and belief, as a direct result of Defendant's actions, Epic has suffered damages in an amount to be proven at trial including, but not limited to, loss of goodwill among users of Epic's services, decreased profits, and lost profits from users whose accounts Epic has terminated for violations of the Terms and the Fortnite EULA.

142.     As a direct result of Defendant's actions, Epic has sustained, and will continue to sustain, substantial, immediate, and irreparable injury for which there is no adequate remedy at law.  Epic is entitled to injunctive relief to restrain and enjoin Defendant's continuing unlawful conduct.

143.     As a further result of Defendant's actions, on information and belief, Defendant has been unjustly enriched by the sales of the cheats that violate the Terms and the Fortnite EULA. The proceeds of the sales are a direct result of Defendant's intentional interference with Epic's contracts with its users and rightfully and equitably belong to Epic. Epic requests that the Court impose a constructive trust over Defendant's proceeds.

144.     Epic is further entitled to compensatory damages and any other available relief.

PPAB 4151246v3

## PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Plaintiff respectfully requests that the Court:

1. Enter judgment in Plaintiff's favor and against Defendant on all claims herein;

2. Adjudge Defendant to have infringed Epic's copyrights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*;

3. Adjudge Defendant to have contributorily infringed Epic's copyrights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*;

4. Adjudge Defendant to have circumvented a technological measure that effectively controls access to a protected work owned by Epic in violation of 17 U.S.C. §§ 1201(a)-(b) and 1203, *et seq.*;

5. Adjudge Defendant to have trafficked in technologies, products, services, devices, components, or parts thereof that circumvent a technological measure that effectively controls access to a protected work owned by Epic in violation of 17 U.S.C. §§ 1201(a)-(b) and 1203, *et seq.*;

6. Adjudge Defendant to have breached the Terms of Service in violation of North Carolina law;

7. Adjudge Defendant to have breached the Fortnite End User License Agreement in violation of North Carolina law;

8. Adjudge Defendant to have intentionally interfered with contracts between Plaintiff and users of its services in violation of North Carolina law;

9. Declare that Defendant's infringement and other wrongdoings were willful in nature;

10. Enter an order pursuant to 17 U.S.C. §§ 502 and 1203 that preliminarily

24

and permanently enjoins Defendant from (i) infringing any of Epic's copyrighted works, including, without limitation, infringement by the use of any software or device that copies or modifies Epic's copyrighted software in violation of the Copyright Act; (ii) inducing or materially contributing to the direct infringement of any of Epic's copyright protected work by others, including, without limitation, infringement by the use of any software or device that copies or modifies Epic's copyright protected work in violation of the Copyright Act; (iii) using any technology, product, service, or device, part of which is primarily designed for the purpose of circumventing a technological measure that effectively controls access to Epic's copyright protected work, where the technological measure effectively controls access to Epic's copyrighted Fortnite code in order to protect Epic's exclusive rights in Fortnite; (iv) trafficking in any technology, product, service, or device, part of which is primarily designed for the purpose of circumventing a technological measure that effectively controls access to Epic's copyright protected work Fortnite, where the technological measure effectively controls access to Epic's copyrighted Fortnite code in order to protect Epic's exclusive rights in Fortnite;

11.     Enter an order that preliminarily and permanently enjoins Defendant from (i) violating the Terms of Service; (ii) violating the EULA; and/or (iii) intentionally interfering with Epic's contractual relations with the other parties to those agreements;

12.     Enter an order pursuant to 17 U.S.C. §§ 502 and 1203 that preliminarily and permanently enjoins Defendant by requiring the destruction of all copies of cheats or hacks in Defendant's possession, custody, or control that can be used to infringe Epic's copyrights in Fortnite so as to prevent or restrain Defendant's continued violations of Epic's copyrights in Fortnite;

13.     Enter an order pursuant to 17 U.S.C. §§ 504 and/or 1203(c) (i) requiring

that Defendant pay Epic a sum certain reflecting the maximum amount of statutory damages permitted under 17 U.S.C. §§ 504 and/or 1203(c), or, in the event that Epic elects to instead to recover actual damages and Defendant's additional profits from Defendant at any time before final judgment is rendered; (ii) requiring that Defendant pay Epic's actual damages and Defendant's additional profits, together with interest, including pre-judgment, to be determined as a sum certain by the Court;

14.     Enter an order pursuant to 17 U.S.C. §§ 505 and 1203(b)  that awards Epic its attorneys' fees, costs, and expenses in a sum certain pursuant to 17 U.S.C. § 505 and/or § 1203(b);

15.     Award Plaintiff such other and further relief as the Court deems just and proper.

This the <u>9th</u> day of March, 2018.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/Christopher M. Thomas
Christopher M. Thomas
N.C. Bar No. 31834
christhomas@parkerpoe.com
Tasneem D. Delphry
N.C. Bar No. 47697
tasneemdelphry@parkerpoe.com
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 828-0564
Facsimile: (919) 834-4564

*Attorneys for Plaintiff*

26